R. Shawn Oller; AZ Bar No. 019233
soller@littler.com
Barry H. Uhrman; AZ Bar No. 020714
buhrman@littler.com
LITTLER MENDELSON, P.C.
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
Telephone: 602.474.3600
Facsimile: 602.957.1801

Attorneys for Defendant
CITY OF SURPRISE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norbert Enos, et al. | Case No. 2:16-cv-00384-JTT |
| Plaintiffs, | **MOTION TO DISMISS ON BEHALF OF DEFENDANT CITY OF SURPRISE** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

This lawsuit arises out of claims by Plaintiffs Norbert Enos, Terry Guy, Julian Singleton, and the National Association of the Deaf (collectively, "Plaintiffs") against the City of Surprise ("the City"), the State of Arizona, the Arizona Department of Administration ("ADOA"), the Maricopa Association of Governments, Maricopa County, the City of Tempe, and the City of Phoenix, as well as other individually-named Defendants in their official capacities with these governmental entities (collectively, "Defendants"). Specifically, Plaintiffs allege disability discrimination claims against Defendants under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Plaintiffs' lawsuit against the City of Surprise must be dismissed as a matter of law, as they have failed to satisfy the *Iqbal/Twombly* pleading standards for any claims against the

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

City. By Plaintiffs' own admissions, the City is already in compliance with the "meaningful access" standard required for ADA and Rehabilitation Act claims. Nowhere have the individual Plaintiffs set forth sufficient facts to demonstrate plausibility of entitlement to relief against the City. Because Plaintiffs' allegations do not permit the Court to infer more than a mere possibility of misconduct, they have not shown that they are entitled to relief to satisfy the *Iqbal/Twombly* pleading standards or to defeat a Motion to Dismiss.

This Motion[1] is supported by the following Memorandum of Points and Authorities and the Court's entire record in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

The following facts are taken from Plaintiffs' Amended Complaint (Dkt. #36)[2] and the Answer filed on behalf of Defendants the State of Arizona, the ADOA, Craig Brown, the Arizona Department of Administration Strategic Enterprise Technology Office, Morgan Reed, and Barbara Jaeger (collectively, the "State Defendants") (Dkt. #25).

### A.    Plaintiffs' Allegations Against All Defendants.

Plaintiffs allege that in the areas covered by the named governmental entities, residents who are deaf, hard of hearing, or "speech disabled" cannot contact 911 via text messaging and, as a result, are denied direct, immediate, and equal access to 911 services (to which individuals without disabilities have access). (Dkt. #36, at p. 3). Specifically, Plaintiffs assert that Public Safety Answering Points ("PSAPs") – the communication facilities that receive 911 calls and notify or dispatch public safety services or relay calls – have the ability to receive 911 calls via teletypewriter ("TTY"), but that TTYs are "obsolete technology" and "declining" in use. (Dkt. #36, at p. 3). They claim that PSAPs can receive 911 calls through

---

[1] Pursuant to this Court's Order (Dkt. #5), underlying counsel for the City certifies it met and conferred with Plaintiffs' counsel regarding the Motion to Dismiss.

[2] The City disputes the facts and claims asserted against them in Plaintiffs' Amended Complaint. Accordingly, the City relies on these facts for this Motion only. The City does not admit any of these facts and reserve the right to present evidence disputing them at trial.

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-2-

telecommunication relay services ("TRS"), but that relay calls are limited to areas where there are high-speed internet connections. (Dkt. #36, at p. 3).

Currently, no PSAPs in Arizona accept text messages. Plaintiffs allege that the State of Arizona (through the ADOA) has the authority to require local agencies operating PSAPs to accept text messages "because the ADOA sets minimum specifications for 911 services through the State's rulemaking process and providing funding to PSAPs" for the costs of receiving and processing 911 calls and messages. (Dkt. #36, at p. 4). Plaintiffs further allege the other governmental entities have the authority to implement text-to-911 services in their respective PSAPs because they have the discretion to include other services in their 911 systems in addition to what the State requires. (Dkt. #36, at p. 4).

Plaintiffs allege that in various areas of Arizona, residents who are deaf or hard of hearing cannot contact 911 via text messaging and, as a result, may be unable to access necessary 911 services to which individuals without disabilities have access. Specifically, Plaintiffs assert that a person who is deaf or hard of hearing in Arizona "cannot report a crime, a fire, a motor vehicle accident, or a medical emergency directly and immediately via text, with the result that such individuals are at substantial risk and face crucial delays in accessing emergency services." (Dkt. #36, at p. 5). In addition, they allege that individuals with other disabilities that impact speech and communication are also unable to access 911 services directly via text messaging. (Dkt. #36, at p. 5).

In sum, it is Plaintiffs' position that the failure to furnish auxiliary aids and services for "equal" 911 access for individuals with disabilities violates both the ADA and the Rehabilitation Act. (Dkt. #36, at p. 5).

**B.  Plaintiffs' Claims for Relief Against All Defendants.**

For their claims under Title II of the ADA[3] and the Rehabilitation Act[4], Plaintiffs seek the following:

---

[3] Title II of the ADA prohibits discrimination against a qualified individual with a disability regarding a public entity's services, programs, or activities and such exclusion or discrimination was by reason of the individual's disability. 42 U.S.C. § 12132; *see also*

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

➢ A declaratory judgment that Defendants discriminated against Plaintiffs in violation of Title II of the ADA and the Rehabilitation Act;

➢ Order Defendants to provide access to emergency 911 services through the activation of existing text-to-911 technology;

➢ Order all Defendants to develop and enforce policies and provide training to employees to ensure communication with individuals with a disability who contact PSAPs by text message; and

➢ Attorneys' fees and costs of litigation.

(Dkt. #36, pp. 34-35).

## II.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim is properly granted when it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

In pleading the grounds of the claim, Plaintiffs must plead enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 444, 555 (2007) (citation omitted). Factual allegations that are consistent with lawful conduct are insufficient. *Id.* at 557. Such allegations are neutral and do not suggest "plausible liability" on the claim. *Id.* at 557, n. 5 (recognizing a line "between the factually neutral and the factually suggestive," which "must be crossed to enter the realm of plausible liability").

Rule 8 of the Federal Rules of Civil Procedure demands more than "an unadorned, the defendant unlawfully harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

*Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *Patrick v. United States Postal Serv.*, CV-10-0650-PHX-ECV, 2010 WL 4879161, *2 (D. Ariz. Nov. 23, 2010).

[4] The Rehabilitation Act proscribes discrimination in all federally-funded programs. *Lovell*, 303 F.3d at 1052; *see also Patrick*, 2010 WL 4879161, at *2 (citing *Lovell*). "The Rehabilitation Act, the precursor to the ADA, applies to federal agencies, contractors and recipients of federal financial assistance, while the ADA applies to private employers with over 15 employees and state and local governments." *Jackson v. Napolitano,* 2010 WL 94110, * 3 (D. Ariz. 2010) (quoting *Calero-Cerezo v. United States Dep't of Justice,* 355 F.3d 6, 19 (1st Cir. 2004)); *see also Patrick*, 2010 WL 4879161, at *2 (citing *Jackson*).

1  A complaint that offers nothing more than naked assertions will not suffice. The Court is not
2  required to accept as true mere conclusions in a complaint, as they are not entitled to the
3  assumption of truth. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56. To
4  survive a dispositive motion, a complaint must contain sufficient facts, which, if accepted as
5  true, state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Plausibility
6  requires "more than a sheer possibility that a defendant has acted unlawfully" and requires
7  that Plaintiffs do more than employ "labels," "conclusions," or a "formulaic recitation of the
8  elements of a cause of action." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts
9  that are 'merely consistent with' a defendant's liability, it stops short of the line between
10 possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting
11 *Twombly*, 550 U.S. at 557 (internal quotations omitted)).

12 Plaintiffs' Amended Complaint does not satisfy the *Iqbal*/*Twombly* pleading
13 requirements set forth by the Supreme Court. Their recitals of legal conclusions do not
14 suffice, as such a thin pleading "does not unlock the doors of discovery for [Plaintiffs] armed
15 with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.[5]

## III. LEGAL ARGUMENT

### A. By Plaintiffs' Own Admissions, the City of Surprise is in Compliance with the "Meaningful Access" Standard Required by Existing Law.

#### 1. Public Entity Requirements for Hearing-Impaired Individuals.

The Code of Federal Regulations requires public entities to implement auxiliary aids
and services designed to ensure that communication with disabled members of the public is

---

[5] In *Iqbal*, the Supreme Court clarified that courts may not simply accept all of Plaintiffs' allegations as true or draw all reasonable inferences in the Complaint in their favor. Rather, *Iqbal* specifically instructs courts that they "are not bound to accept as true a legal conclusion couched as a factual allegation." 556 U.S. at 678. Post-*Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but not shown - that the pleader is entitled to relief." *Id.* at 679. Under *Iqbal*, Plaintiffs failed to provide sufficient factual allegations to survive dismissal of their claims against the City.

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-5-

as effective as communication with others. C.F.R. §§ 35.160(a)(1), 35.160(b)(1)-(2).[6] To that end, the Code of Federal Regulations requires the City to implement "***TTYs or equally effective telecommunication systems*** to communicate with individuals who are deaf or hard of hearing or have speech impairments.28 C.F.R. § 35.161 (emphasis added).

The City meets the federal mandate by its implementation and use of TTY communication services.

### 2. Contrary to Plaintiffs' Allegations, "Meaningful Access" is the Required Standard, not "Equal Access," and Plaintiffs' Claims Premised on "Equal Access" Fail as a Matter of Law.

In their Amended Complaint, Plaintiffs erroneously assert that "equal access to emergency 911 services through the activation of existing text-to-911 technology" is what is required (Dkt. #36, at p. 2) and that Plaintiffs are entitled to "equal access" under the law. (Dkt. #36, ¶¶ 37, 40, 44, 69, 103, 117, 134-135, 145). Equal access is not the governing standard here.

To the contrary, the ADA and its implementing regulations do not require "equal access" (or equal results) for individuals with disabilities. Rather, the ADA provides that a public entity must operate each service, program, or activity so when that service, program, or activity is viewed in its entirety, it is "readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). In other words, the ADA requires that Plaintiffs (individuals who are deaf or hearing impaired) be provided with "meaningful access" – and not "equal access" – to the programs and activities of public entities.

The "meaningful access" standard is found in the case law interpreting the requirements of both the ADA and the Rehabilitation Act. In formulating this standard, the Supreme Court explicitly rejected the position that all conduct that had a disparate impact on disabled persons violated the Rehabilitation Act, noting "two powerful but countervailing considerations – the need to give effect to the statutory objectives and the desire to keep § 504 within manageable bounds." *Alexander v. Choate*, 469 U.S. 287, 299 (1985). The

---

[6] The term "auxiliary aids and services" includes TTYs. 28 C.F.R. § 35.104.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-6-

"meaningful access" standard thus struck a balance between these two legitimate goals. *Id*. at 299-301.

The "meaningful access" standard has been adopted by the Ninth Circuit in analyzing a public entity's administration of services as programs. *See Lonberg v. City of Riverside*, 571 F.3d 846, 851 (9th Cir. 2009) (stating that Title II's "prohibition against discrimination is universally understood as a requirement to provide 'meaningful access'"); *Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008) (noting that the ADA requires reasonable modifications necessary to ensure "meaningful access"). In addition, this is the standard adopted by other circuits. *See, e.g., Iverson v. City of Boston*, 452 F.3d 94, 99 (1st Cir. 2006) ("The clear purport of Title II is to guarantee that qualified disabled persons enjoy meaningful access to public services, programs, and activities."); *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 913 (6th Cir. 2004) (noting Title II's express aim of providing meaningful access by requiring public entities to alter city streets and sidewalks); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003), (holding that the relevant measure is "whether the plaintiffs with disabilities could achieve meaningful access not whether the access the plaintiffs had (absent a remedy) was *less* meaningful than what was enjoyed by others.").

Contrary to Plaintiffs' claims, neither Title II of the ADA nor the Rehabilitation Act requires equal results. Both statutes prohibit discrimination against the disabled in the provision of public services, but the statutes neither guarantee any particular level of services for disabled persons, nor assure maintenance of service previously provided. Rather, the statutes require only that covered entities adhere to non-discrimination requirements with regard to the services they in fact provide and make reasonable accommodations to enable meaningful access to such services. *See Colbert v. D.C.*, 110 F. Supp. 3d 251, 256-57 (D.D.C. 2015) ("The disabilities statutes do not require that substantively different services be provided to the disabled, no matter how great their need for the services may be. They require only that covered entities make 'reasonable accommodations' to enable 'meaningful access' to such services as may be provided, whether such services are adequate or not.");

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

*see also Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 986 (9th Cir. 2014) (noting that Title II's emphasis on program accessibility was intended to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to choose how best to make access available)

In addition, the statutes do not guarantee disabled persons "equal results" from the provision of a public service or benefit. *See Alexander*, 469 U.S. at 304 ("The [Rehabilitation] Act does not, however, guarantee the handicapped equal results from the provision of state Medicaid, even assuming some measure of equality of health could be constructed."); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003), (holding that the relevant measure is "whether the plaintiffs with disabilities could achieve meaningful access not whether the access the plaintiffs had (absent a remedy) was *less* meaningful than what was enjoyed by others.")

For purpose of Plaintiffs' Amended Complaint, any arguments for a stricter "equal access" standard should fail, and the provision of 911 services is properly analyzed under a "meaningful access" standard.

### 3. The City Meets the Requirements of Federal and Arizona Laws.

In their Amended Complaint, Plaintiffs falsely claim that the Federal Communications Commission ("FCC") requires telephone service providers to ensure that users have the ability to send 911 text messages to PSAPs that accept them. (Dkt. #36, ¶ 105). To establish text-to-911 capability, a PSAP must agree to accept 911 text messages from the public. Plaintiffs assert there are three ways to set up text-to-911 services: (1) web-based text-to-911 systems; (2) IP-based text-to-911 systems, and (3) accepting 911 text messages via TTY. (Dkt. #36, ¶¶ 107, 109).

Plaintiffs' Amended Complaint baselessly asserts that the FCC requires PSAPs to accept and implement text-to-911 service, when in fact the FCC has no authority to issue rules governing PSAPs – and that the City of Surprise's failure to follow such FCC rules violates Title II of the ADA and the Rehabilitation Act. The FCC's own website, however, explicitly states otherwise. In fact, the FCC confirms and supports the City's position:

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-8-

> *When will text-to-911 become widely available?*
>
> *All U.S. wireless carriers and other text messaging providers must deliver emergency texts to PSAPs upon request.* ***If a PSAP requests text-to-911 service,*** *text messaging providers must deploy the service in that area within six months.*
>
> ***The Commission has encouraged PSAPs to begin accepting texts as text providers develop text-to-911 capability. It is up to each PSAP to decide whether and when to begin accepting texts.***
>
> *We expect that others will do so and that text-to-911 will become available in more areas over time. Information on best practices from public safety organizations and from PSAPs that have implemented text-to-911 is available here.*

https://www.fcc.gov/consumers/guides/what-you-need-know-about-text-911 (emphasis added).

In fact, the FCC's rules regarding 911 service require the following:

- ➢ Wireless phone companies must transmit all 911 voice calls to 911 centers (also known as PSAPs).

- ➢ Wireless phone companies must send information about your telephone number and location to a PSAP when you make a 911 call so you can get help more easily.

- ➢ Wireless phone companies and other text messaging providers (i.e., those that enable consumers to send text messages to and from U.S. phone numbers) must deliver emergency texts to PSAPs upon request. If a PSAP requests text-to-911 service, text messaging providers must deploy the service in that area within six months.

- ➢ Wireless phone companies, as well as certain text messaging applications, must provide automated "bounce-back" messages in instances when you attempt to send a text message to 911 in an area where text-to-911 service is unavailable. The bounce-back messages will inform you that text-to-911 is not available and direct you to contact emergency services by another means, such as by making a voice call or using telecommunications relay services (if you are deaf, hard of hearing, or have a speech disability).

> ➢ **The FCC does not have authority to issue rules regulating 911 centers, and so it cannot require these centers to accept text messages.**

https://www.fcc.gov/consumers/guides/text-911-quick-facts-faqs (emphasis added).

Again, what Title II requires is that public entities (including the City of Surprise) provide auxiliary aids and services – such as TTYs – to allow disabled individuals to enjoy the benefits of the City's programs and services. 28 C.F.R. § 35.160(b)(1). The Department of Justice does *not* require PSAPs to accept and implement text-to-911 service. ADA Title II Technical Assistance Manual, § II-7.000.[7] As noted above, federal law requires public entities to use "TTYs or equally effective telecommunications systems" to communicate with individuals who are deaf or have hearing impairments. 28 C.F.R. § 35.161. Plaintiffs admit that the Department of Justice requirement is for PSAPs to have TTYs. (Dkt. #36, ¶ 112, citing 28 C.F.R. § 35.162) and that the City already has the capability of receiving 911 calls via TTY. (Dkt. #36, at p. 3).

In Arizona, "[e]ach telephone position with the capability of answering or handling 9-1-1 calls shall be equipped with the necessary interface to communicate with TDD/TTY devices for communications with hearing-impaired individuals in accordance with the Americans with Disabilities Act." Ariz. Admin. Code § R2-1-407(2). In other words, the design standard only requires implementing the necessary interface for calls from TTY devices. (Dkt. #36, ¶ 8). And Plaintiffs have already admitted the City's PSAP has the capability of receiving 911 calls via TTY. (Dkt. #36, at p. 3).

While Plaintiffs allege that TTY does not provide equal access to 911 services for persons with disabilities, "equal access" is not the standard – nor does it become the standard simply because Plaintiff asserts it as an allegation.[8] By Plaintiffs' own admissions, the City

---

[7] https://www.ada.gov/taman2.html.

[8] *Iqbal* specifically instructs courts that they are not bound to accept as true legal conclusions couched as factual allegations. 556 U.S. at 678. Post-*Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The Court need not assume that Plaintiffs can prove facts different from those alleged in their Complaint. *See Armendarez v. Glendale Youth Center, Inc.*, 265 F.Supp.2d

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

of Surprise is in compliance with the current standard of "meaningful access" by having the capability of receiving 911 calls via TTY.

Plaintiffs fail to satisfy the *Iqbal/Twombly* pleading standards because there are no facts to demonstrate plausibility of entitlement to relief against the City. There are no allegations that the City of Surprise is in violation of any federal or state law. Nowhere in Plaintiffs' Complaint is there any assertion of what the City was required to do, failed to do, or must change, with respect to 911 services. In other words, at no point have Plaintiffs presented allegations to allow this Court to infer more than a mere possibility of misconduct to satisfy their pleading requirements or to defeat a Motion to Dismiss.

As a matter of law, Plaintiffs cannot establish their claims under the ADA or the Rehabilitation Act.

### B. Plaintiffs' Amended Complaint Against the City Must Be Dismissed Because Plaintiffs Unequivocally Assert the State of Arizona Defendants Had Final Policymaking Authority.

Plaintiffs assert that the City of Surprise has the authority to make policy decisions regarding the services its PSAP provides, in addition to meeting the minimum standards required by the State of Arizona. (Dkt. #36, ¶ 79). Specifically, they assert the City violated the ADA and the Rehabilitation Act based on this policymaking authority, on the false premise that the City's authority is co-extensive with the State of Arizona's – the premise is controverted by the State of Arizona in its Answer to Plaintiffs' Complaint.

Plaintiffs' allegations assert that the State of Arizona Defendants[9] had such authority. Specifically, Plaintiffs asserted the following, in pertinent part:

> The State of Arizona, by and through the Arizona Department of Administration ("ADOA"), has the authority to require local agencies operating PSAPs to accept text messages because the

---

1136, 1138 (D. Ariz. 2003). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Id*.

[9] Defendants The State of Arizona, the Arizona Department of Administration, Craig Brown, Paul Shannon, Morgan Reed, and Barbara Jaeger ("the State of Arizona Defendants").

> ADOA sets minimum specifications for 911 services through the State's rulemaking process, and provides funding to PSAPs for costs for necessary equipment required by the PSAP to receive and process 911 messages as well as 911 calls. The State of Arizona may also cover other eligible costs associated with implementing text-to-911 services, such as PSAP station terminal equipment and maintenance, necessary and appropriate consulting fees, and specified administrative costs.

(Dkt. #36, at p. 4).

> Arizona established the Emergency Telecommunication Service Revolving Fund ("the Fund") to fund emergency telecommunication services ("911 Service").
>
> …
>
> Arizona, through the Arizona Department of Administration ("ADOA") administers the Fund to support and implement 911 Service through local governmental units. A.R.S. § 41-704.
>
> …
>
> ADOA must review, and as appropriate, approve and certify each Regional 911 Planning Committee's Service Plan. A.A.C. § R2-1-404.
>
> …
>
> For a Regional 911 Planning Committee to be approved for payment of eligible costs, PSAPs must meet specific operational requirements established by ADOA...

(Dkt. #36, ¶¶ 3, 4, 9, 13).

> Defendant, the State of Arizona, by and through Defendant ADOA, collects revenues and disburses funds to the Arizona Strategic Enterprise Technology Office ("ADOA-ASET") in order to implement and operate 911 emergency telecommunication services throughout Arizona.[10]

(Dkt. #36, ¶ 23).

> **The State of Arizona makes policy decisions** including what minimum system design and operational standards PSAPs operated by local government agencies must have **and whether they must accept texts to 911.**

(Dkt. #36, ¶ 72) (emphasis added).

---

[10] In its Answer to Plaintiffs' initial Complaint, the State of Arizona Defendants admitted these allegations. (Dkt. #1, p. 6, ¶ 7; Dkt. #25, p. 2, ¶ 7).

> Defendant State of Arizona has the authority to order text-to-911 systems for PSAPs, including in Maricopa County and the cities of Surprise, Tempe, and Phoenix.

(Dkt. #36, ¶ 99). In other words, Plaintiffs' Amended Complaint unequivocally asserts that the State of Arizona Defendants had final policymaking authority and the *sole* ability to direct the City of Surprise to establish requirements to establish text-to-911 services.

In its Answer to Plaintiffs' initial Complaint, the State of Arizona admits it has sole authority regarding policymaking decisions, oversight responsibility, and funding for PSAPs:

- ➢ Admitted the State of Arizona has oversight responsibility for the revenues collected through the Emergency Telecommunication Service Revolving Fund and that there are approximately 76 PSAPs in Arizona.

- ➢ Admitted the State has oversight responsibility for the revenues collected through the Emergency Telecommunication Service Revolving Fund.

- ➢ Admitted the Director of the Arizona Department of Administration has adopted rules for administering and disbursing monies deposited in the Emergency Telecommunication Services Revolving Fund (the "ETSRF"), which include rules regarding service plans, 9-1-1 system design standards, 9-1-1 operational requirements, funding eligibility and allocation, and method of reimbursement.

- ➢ Admitted the regulations promulgated by the Director of ADOA and set forth in the Arizona Administrative Code R2-1-401 *et seq.* represent "policy decisions" regarding the capabilities of PSAPs.

(Dkt. #25, pp. 10-11, ¶¶ 60-61, 64, 67).

It is dispositive to Plaintiffs' claims against the City of Surprise that the Plaintiff alleges and the State of Arizona admits that the State, not the City, has sole policymaking authority regarding the requirement to implement text-to-911 services and the City is in compliance with the existing federal and state requirements

As a matter of law (and to the extent they are permitted under the ADA and Rehabilitation Act), Plaintiffs are precluded from asserting any claims against the City of Surprise based on policymaking authority and/or policy decisions for the implementation of text-to-911 capabilities.

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

-13-

C.     **Plaintiffs' Equitable Relief Claims Fail as a Matter of Law.**

     1.     **Plaintiffs Cannot Establish Their Claims for Declaratory Relief.**

Plaintiffs' Amended Complaint identifies Plaintiffs Norbert Enos and Julian Singleton as residents of the City of Surprise who are deaf. Neither individual Plaintiff has contacted the City of Surprise through 911 and been denied access to 911 services. In fact, the Amended Complaint is premised on the fact that both Mr. Enos and Mr. Singleton "live in fear" of what might happen because they and their respective spouses are senior citizens who might have to contact 911 at some point in the future. (Dkt. #36, ¶¶ 49-55, 89).

Plaintiffs are only entitled to present claims for declaratory relief if they can identify a present justiciable controversy. This requires that Plaintiffs have a "personal stake" in the outcome – i.e., that they have sustained or are immediately in danger of sustaining some direct injury. *See City of Los Angeles v. Lyons*, 103 S.Ct. 1660, 1665 (1983). It assures "concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." *Id*. "Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Id*. (citations omitted). Further, a plaintiff who may have standing to seek damages for a past injury "does not necessarily have standing to seek prospective relief such as a declaratory judgment." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (internal quotation marks and citations omitted).

To have standing to bring a claim for relief, a plaintiff must show that he/she has (1) suffered an injury that (2) was caused by the defendant and (3) is likely to be redressed by the relief she seeks. *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1036-37 (9th Cir. 2006); *Thinket Ink Info. Res., Inc. v. Sun Microsytems, Inc.,* 368 F.3d 1053, 1057 (9th Cir.2004); *see also Arnold v. Kraf*, No. 2:12-cv-00304 JWS, 2012 WL 2131894, *1 (D. Ariz. 2012) ("To demonstrate Article III standing, [the plaintiff] must show 1) an injury in fact, 2) that is fairly traceable to [the defendant's] challenged actions, and 3) that her injury would likely be redressed by a favorable decision).

Plaintiffs' factual allegations demonstrate that this is simply not a declaratory judgment case. There are no allegations that Plaintiff Norbert Enos has ever used or attempted to contact 911 through the City of Surprise, much less been denied access to 911 services. And the Amended Complaint asserts that Plaintiff Julian Singleton has contacted 911 on two previous occasions and was able to access 911 services.

Plaintiffs' Amended Complaint is devoid of facts showing any ongoing controversy, let alone an "immediate" one, or that Plaintiffs Enos and Singleton[11] have standing[12] to pursue their claims. Without an actual controversy, Plaintiffs lack standing to pursue their claims.[13]

---

[11] Plaintiff Terri Guy is not alleged to be a resident of the City of Surprise; in fact, she is a resident of the City of Tempe. (Dkt. #36, ¶ 21). There are no factual allegations that Plaintiff Guy contacted 911 as a resident of the City of Surprise or while she was in the City of Surprise.

[12] Nowhere in Plaintiffs' Amended Complaint is the claim of the National Association of the Deaf ("NAD") set forth, much less specifically against the City. While the Amended Complaint makes references to NAD members and that they would not have access to services, its claim is being brought solely based on associational standing because the NAD has members who reside in Arizona, including in City of Surprise, who are being discriminated against because they are not provided with direct, immediate and "equal access" to 911 services. (Dkt. #36, ¶¶ 19(B), 19(E), 46, 70, 98). But nowhere are there any facts demonstrating that _any_ NAD member contacted 911 as a resident of the City of Surprise or while he or she was in the City, much less that he or she was denied access to 911 services. And as set forth below, "equal access" is not the standard.

[13] To the extent Plaintiffs make the conclusory allegation there is an "actual controversy" between them and the City – at least as to the claim for declaratory relief, if not any other claim – the Court need not accept that legal conclusion. Dismissal under Fed. R. Civ. P. 12 may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also West v. Brewer*, CV-11-01409-PHX-NVW, 2011 WL 2912699, *2, (D. Ariz. July 20, 2011) (citing *Balistreri*); *Cook v. Brewer*, CV 10-2454-PHX-RCB, 2011 WL 251470, *2 (D. Ariz. Jan. 26, 2011) (same). In fact, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994); *see also West*, 2011 WL 2912699, at *2 (quoting *Clegg*); *Cook*, 2011 WL 251470, *2 (same).

### 2. Plaintiffs Cannot Establish Their Claims for Injunctive Relief.

Plaintiffs' claim for injunctive/equitable relief suffers the same deficiencies as the one for declaratory relief. They seek an injunction and ruling from the Court enjoining the City from implementing or enforcing policies or procedures that deny individuals with disabilities equal access to and an equal opportunity to participate in the City's programs or services, including any policy or practice that limits or restricts individuals who are deaf or hard of hearing from using text messages to communicate with PSAPs.

As with the declaratory relief claim, the Court lacks Article III jurisdiction over the injunctive claims. Plaintiffs lack standing to seek injunctive relief, as they fail to allege facts showing a current case or controversy or an actual or imminent concrete and particularized injury in fact, or a likelihood of future harm.

Once a plaintiff has been (allegedly) wronged, he or she is entitled to injunctive relief only if he can show that he faces a "real or immediate threat . . . that he will again be wronged in a similar way." *Lyons*, 103 S.Ct. at 1670; *see also Arnold*, 2012 WL 2131894, *1 ("In addition, to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [s]he must demonstrate a real and immediate threat of repeated injury in the future."). "It is the reality of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions. The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Lyons*, 103 S.Ct. at 1667, n. 8. Again, as set forth above, even past exposure to harmful or illegal conduct does not necessarily confer standing[14] to seek injunctive relief if the plaintiff does not continue to suffer adverse effects.

---

[14] To the extent Plaintiffs are seeking an order from the Court directing the City not to discriminate against Plaintiffs in the future, this is not a proper purpose of equitable relief, as disability discrimination is already prohibited by the ADA and the Rehabilitation Act.

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

Here, there are no facts showing past exposure to illegal conduct, much less any facts that Plaintiffs were denied access to 911 services by the City of Surprise. As noted above, nowhere have Plaintiffs Enos and Singleton alleged that they used the City's 911 services or attempted to contact 911 and were denied access. As a result, there are no facts to demonstrate they are immediately in danger of sustaining any direct or immediate injury. The Amended Complaint lacks facts showing a justiciable controversy or standing, and Plaintiffs' claims for declaratory or injunctive relief must be dismissed as a matter of law.

## IV.    CONCLUSION

Judgment as a matter of law must be in favor of the City of Surprise. By Plaintiffs' own admissions, the City already complies with the existing requirements (TTYs) to provide meaningful access to individuals with disabilities under the ADA and the Rehabilitation Act. Plaintiffs erroneously assert that the standard of "equal access" is required and that the FCC requires the governmental entities to implement text-to-911 services; to the contrary, the FCC specifically asserts that it is *not* required of governmental entities. Furthermore, nowhere have the individual Plaintiffs articulated any actual controversy to sustain a lawsuit against the City.

As a matter of law, it cannot be disputed that no relief could be granted to Plaintiffs under any set of facts that could be proved consistent with their allegations regarding the Title II and Rehabilitation Act claims. As a result, this Court should dismiss all claims against the City of Surprise in their entirety and dismiss the City from this lawsuit.

RESPECTFULLY SUBMITTED this 29th day of July, 2016.

*s/ Barry H. Uhrman*
R. Shawn Oller
Barry H. Uhrman
LITTLER MENDELSON, P.C.
Attorneys for Defendant
City of Surprise

1  I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 29th day of July, 2016:

Asim Dietrich
Rose Daly-Rooney
Arizona Center for Disability Law
5025 E. Washington Street, Suite 202
Phoenix, AZ 85034

Debra Patkin
National Association of the Deaf, Law and Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, Maryland 20910

Michael Stein
Mary Vargas
Stein & Vargas, LLP
5100 Buckeystone Pike, Suite 250
Frederick, Maryland 21704
Attorneys for Plaintiffs

Karen J. Hartman-Tellez
Office of the Attorney General
1275 W. Washington Street
Phoenix, AZ 85007
Attorneys for The State of Arizona, Arizona Department of Administration, Arizona Department of Administration – Arizona Strategic Enterprises Technology Office, Craig Brown, Morgan Reed, Barbara Jaeger

Emily M. Craiger
Maricopa County Attorney's Office
222 N. Central Avenue, Suite 1100
Phoenix, AZ 85004
Attorneys for Maricopa County

Anoop Bhatheja
Sanders & Parks, P.C.
3030 North Third Street, Suite 1300
Phoenix, AZ 85012-3099
Attorneys for the City of Phoenix

Charles L. Cahoy
City Attorney's Office, City of Tempe
21 E 6th Street, #201
Tempe, AZ 85281
Attorneys for Defendant City of Tempe

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-18-

1  Anne L. Tiffen
2  Dickinson Wright PLLC
   1850 N. Central Avenue
3  Suite 1400
   Phoenix AZ 85004
4  Attorneys for the Maricopa Association of Governments

5  *s/ Tisha A. Davis*

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-19-